Good morning. May it please the court. In Mr. Fechner's child pornography trial, the government introduced several exhibits that are inadmissible and require reversal. He raises three separate evidentiary challenges, and I hope to reach all three today. But I will begin with the challenge to the admission of images in the preteen folder. The introduction of these non-pornographic images was not intrinsic to the offense, it was not proper 404B evidence, and even if it was relevant, it should have been excluded under Rule 403. These images were found only during the third forensic examination by the expert through the use of a special tool in the process of carving. These images were found in the deleted space just as the child pornography images were found on the SD card. First, these aren't integral to the crime charged. As the district court acknowledged and told the jury, these are not child pornography images, so they could not form the basis of the elements of the offense at his trial. They're also not proper 404B evidence. Instead, this is simply propensity evidence under the circuit's cases in Heideberg and Johnson. Was your client's defense lack of knowledge? Yes, it was, Your Honor. So isn't it arguably, and I don't think the district court admitted it on this basis, but isn't it arguably 404B evidence going to his defense of lack of knowledge in the sense that these were located in the same area? I believe the forensic evidence indicated that whoever had access to this device had been moving files within this area, which is the same area where the pornography images were thought to have been earlier. It does not go to knowledge, Your Honor, and this is where that Henson case comes in. There's also testimony by that same expert that it doesn't necessarily require any kind of user interaction to take it from the phone to the SD card. A user could have a setting that was SD card storage device. But even if it did, even if the moving of these preteen images to the SD card required some sort of user interaction, the Henson case still applies. Because it doesn't get to any kind of knowledge when the child pornography that was found on the SD card also required user interaction, when the preteen images also required user interaction. In these cases that are cited in our briefs, where other circuits have admitted this kind of evidence, you had different actions that indicated the hidden images, which were generally the child pornography, that the defendant had knowledge, because in a different obvious location that defendant had some kind of erotica or other type of image. So that shows he was more likely to know about the less accessible images. That's not what we have here. Here we have inaccessible images arguably moved to the SD card by user interaction. And I dispute that with the same as the preteen images. So it doesn't help with knowledge and it doesn't assist the jury. Because it doesn't, it's impermissible propensity evidence. Further, it wasn't harmless. The initial district court instruction, limiting instruction given during trial, in fact, was prejudicial in and of itself. It told the jurors that they could consider it to, it was offered to show the defendant's interest in young children's crimes. Under Johnson and Heidelberg, that's incorrect. The jury shouldn't be able to use those images for that. Another problem with this instruction, and even in the later 404B instruction, is that the judge didn't say, you can consider this if you find that Mr. Fechner had knowledge of these preteen images. There's nothing about that in the limiting instruction given at the time. And in the 404B instruction, the jurors were told, you can consider it if they were found on the device. That really wasn't contested, and even if it was purported to prove knowledge, wouldn't be helpful to the jury in that regard. Also there is testimony that there was over 400 images, which is incredibly prejudicial. And the government repeated that fact during closing argument, discussing these preteen images and what the images depicted. And the court, and the government actually introduced, I believe, 12 images from this folder. Next, the introduction of several charts and summaries was improper. This court and other circuits have repeatedly cautioned against the use of charts and summaries in criminal trials because they are incredibly persuasive, but can also be misleading. These charts are not admissible under Rule 1006, and they are also not proper pedagogic devices. First, we're challenging Government Exhibit 6. The government asserts that this is admissible under Rule 1006. Under Rule 1006, the idea is that the government can put on this summary because it would be impractical to put on the underlying data. It doesn't have to be impossible, but it just has to be impractical. And it's because of that, it's treated as substantive evidence. Here, the government is trying to rely on this rule, not because it was impractical, but because they wanted to avoid playing the videos for the jury. And these weren't voluminous documents. These were 37 videos, generally about a minute long, the longest was 20 minutes, and the government only introduced 6 of these videos. So this is not the circumstance where we generally have a very complex financial crime, a big conspiracy, where it's necessary to get a summary in because the jury just can't take in that much data. Instead, it's using it to allow the government here to tell the juries that an element of the offense is met. Because here, this summary indicated that the videos depicted minors engaged in sex acts. Even under Rule 1006, they can't be conclusory and they're not supposed to have argumentative recastings. And that's exactly what this was. The government told the jury that an element of the offense was met through this summary chart. It also appears it was admitted as substantive evidence. In all of these charts, it appears that they were admitted as substantive evidence, and that makes them more prejudicial and requires reversal. The three remaining charts challenged, Government Exhibits 38, 41, and 45, these were the comparison charts, which involved the outside videos and the government stated these thumbnails or this snippet matches a video found on the outside of the device. These are not proper pedagogic devices. Pedagogic devices require reversal if they are so unfair and misleading as to require reversal. Part of this analysis requires determining if they were conclusory. These exhibits were incredibly conclusory. They told the jury for a fact that this thumbnail, or whatever it may be, matches this outside of video that was not found on Mr. Fechner's device. And because of these errors and it was inadmissible, the errors are not harmless and require reversal. There was a limiting instruction given and the government is correct that it was this court's model instruction. But it didn't lessen any burden because throughout the trial, it wasn't really clear when these charts are coming in, is it under Rule 1006? Is it substantive evidence? Can you only consider it as a summary if it's consistent with the other underlying evidence? The only time that this was done was with Government Exhibit 38. There, at the time, the district court did state, you can only consider this if it's accurate. But with Government Exhibit 6, 41, and 45, the court didn't state, this is substantive evidence, consider it on its own, or this is just supposed to help you summarize the evidence. So that even though the limiting instruction discusses how they can be considered, the jurors weren't told how to apply that in the two circumstances. It also requires reversal because the charts were heavily used and very conclusory, repeatedly throughout Mr. Fechner's trial. Finally, the government introduced videos found in outside investigations. They not only introduced the videos, they introduced screenshots from these videos and comparison charts discussing these outside videos. This evidence was irrelevant and even who was slightly relevant was more prejudicial than probative and requires reversal. Mr. Fechner challenges 10 separate exhibits that discuss these outside videos. These exhibits, just like the charts, were introduced as substantive evidence, not demonstrative evidence, in Mr. Fechner's trial. I want to push back on the idea the government repeatedly states in its videos, well these were the same videos. We had an expert talk about InfoHash. These were the same. That misconstrues how a defendant is charged in a criminal trial with child pornography. Mr. Fechner wasn't charged with possessing an InfoHash. He wasn't charged with possessing the Vicky series. He was charged with possessing the specific file that they found on his device or the specific files they alleged they downloaded from his IP address. Just to say this is the same because we found it elsewhere is incorrect. The question is whether he had knowledge and knowingly transported the images that either law enforcement obtained from that IP address or were found on his devices. The fact of what is contained inside the video also does nothing to establish knowledge. The question is whether he knew they were on his devices or he knew that they were being transported to other people. What is actually contained within them doesn't help the jury to determine if he knew about these deleted files and if he knew that he was sharing with other people. If there are no further questions, I would reserve the remainder of my time for questions. Seeing none, Mr. Fechner. Good morning and may it please the court. The district court has broad discretion to omit evidence at trial and the court did not abuse its discretion in this case. I will start where Ms. Quick did, which is the images of child erotica. Those images were properly admitted in evidence. So what was the reason when the U.S. offered those at trial? Wasn't it to show sexual interest in children? That was among the reasons. That was one of the proffered reasons. And what was the jury instruction that the district court offered on this particular evidence? So the court offered two instructions. There was a contemporaneous instruction at the time the evidence was admitted and then there was this court's pattern 404B instruction at the final jury. And did one of those relate to an interest in children, a sexual interest in children? So the initial instruction said, members of the jury, this is the contemporaneous instruction. These particular exhibits are not child pornography. The government is not seeking a conviction on counts 1, 2, or 3 based on them. They are offered to show the defendant's interest in young girls and the motivation for committing the crime. Now, how is that not propensity in evidence under Johnston in our circuit? Well, I think Johnston is very different because in Johnston the district court found that the, in that case it was fictional stories. The district court found essentially that it was propensity evidence and admissible for that purpose. The court in Johnston, I want to get the court's exact language. The court found the stories demonstrate defendant's interest in and predisposition to possess child pornography. Predisposition is another word for propensity. The court then instructed the jury it could consider those stories to prove the defendant's, quote, inherent tendency to commit the acts charged in the indictment. That's another phrase for propensity. Sexual interest in children is not the same as propensity. And I think a variety of courts of appeals have recognized that sexual interest in children can be permissible motive evidence. Motive is, of course, a permissible purpose under Rule 404B. The reason the defendant was downloading, collecting, and possessing child pornography was because he had a sexual interest in children. That was his motive. That's highly relevant when the only dispute at trial is whether he knew what was on his phone or whether it was there by accident or by mistake. And so I would quibble with the notion that a sexual interest in children equals propensity. I don't know of courts of appeals who have reached that conclusion. In fact, I think this sort of evidence is routinely admitted in these types of cases. We cited the cases from the Second and Third and Fourth Circuit in our briefs. So here – Before we leave that, one other issue about the cautionary instruction that Judge Jarvi gave. You know, you didn't read the last sentence, which to me is confusing. He said, use them for any purpose consistent with that that you might find helpful. And, you know, and that seems an invitation that's broad or, you know, broad enough that – how's a jury to take that? I mean, it's for any reason consistent with that that you might find helpful? I mean, that's – I understand the concern, Your Honor. Keep in mind, that was the Court's initial contemporaneous instruction when the evidence was admitted. But then in the final jury – and let's be clear, there was no objection at the time that Judge Jarvi gave that instruction. So I think that if the Court – if we're arguing about instructional error, that would be plain error of view by this Court. Then Judge Jarvi gave the pattern model 404B instruction in the final jury instructions, which this Court has repeatedly held handle the issue of unfair prejudice and cure any unfair prejudice. And so I think if you're concerned that the Court didn't give the jury enough guidance, the Court did in the final jury instructions, which, of course, the jury is presumed to have followed. But I want to go back to Judge Koob's – your question about propensity. I think perhaps the simplest analysis under Rule 404B is knowledge. Clearly a permissible purpose. And this child erotica tended to show the defendant's knowledge in multiple ways. So first of all, he's got child pornography on his phone, and then he also has child erotica on his SD card, which is plugged into his phone. So now he has sexualized images of her on a second storage device, which tends to show that he's acting knowingly and not by accident. The mere volume of this child erotica, which Ms. Quick referred to, there were over 400 images. Well, it is likely that if someone has 400 photos saved on an SD card that is inserted into his phone, he knows that he has 400 photos on his phone. Most people do not have hundreds of photographs on their phones that they don't know about. And it was also relevant to knowledge because the government's expert testified that it was likely that the user of that phone put those images on that SD card intentionally and chose to put them there. That testimony is very clear in the record. It's on page 254 and 255, I believe, that this is not the default path where images would go if they were downloaded. They would normally be saved on the phone. They had to be switched to be the settings or move those files one by one. So I think for any of those reasons, this was proper 404B evidence to prove knowledge and the court properly admitted it on that basis. As for the second issue, which is the charts, so there are, as Ms. Quick noted, two groups of charts that are being challenged here. I think the overarching point is that the district court has very broad discretion about whether to admit summary charts. And reversal is only proper if those charts are so unfair that reversal is required. And nothing close to that is true here. So there's the initial chart, Government Exhibit 6, which is a summary of voluminous records. So we jumped through every hoop required by Rule 1006 and this Court's precedent to put that chart into evidence. The agent testified that he had reviewed the voluminous material. He testified that the material, these videos were many minutes in length. If you put them all together, he testified that they were voluminous. We then, he testified that the summary was accurate. We then offered the summary and there was no challenge to the accuracy of the summary. There was a hearsay objection, which was obviously not correctly taken. There was never a challenge at trial about whether the summary was accurate. And the summary does not contain argument or legal conclusions. It contains factual descriptions about what's in these videos and the Court can review the summary to confirm that. But in any case, the government actually admitted and played portions of six videos that show adult men sexually assaulting children. And so even if there were some sort of an error, which I think would have to be plain error, given that there was no challenge to its offer under 1006, I don't see how any error could have been prejudicial here. We played some videos and we offered an accurate, properly authenticated summary of other videos so that we did not play the jury many, many minutes of child pornography videos that I assure this Court, if there's a way to avoid subjecting the jury to lengthy exposure to such videos, I assure this Court that district judges across the Eighth Circuit would encourage the government not to traumatize our jurors by playing Speaking of that, district judges frequently limit the number of images or the length of videos that may be shown. Were there any such orders issued in this case? There were no such orders, but the government voluntarily did so. So we offered only six videos and we only played portions of those videos. When we published the images, we chose only a handful or maybe two, you know, ten or so images to display. We tried to be careful about what we subjected our jury to. The other summaries were just straightforward pedagogical summaries. They summarized evidence that had previously been admitted into the record. They summarized testimony from two different witnesses and consolidated evidence from multiple exhibits. The witnesses whose testimony was summarized examined those summaries on the witness stand and testified that they were accurate. There was no objection to their evidence. And so there is another example where the district court simply has very broad discretion about whether to admit those as substantive evidence, and the court properly did so here. The third issue relates to the four child pornography videos that the defendant challenges. And the simple point about those videos is that, so the objection is that they are irrelevant. The evidence at trial showed that those videos were on the defendant's phone at the times charged in the indictment. And so those were among the child pornography that he was charged with transporting and receiving and possessing. In a child pornography case, the child pornography the defendant is charged with is relevant. Now it is true that those videos were not found on the defendant's phone because he wiped his phone and deleted that content shortly before the search warrant was executed. But the evidence at trial conclusively showed that they were on his phone at the times charged in the indictment. And we've rehearsed that evidence in great detail in our brief, and I'm not going to review it with the court unless you have questions. But for each video, we showed that those videos were on the phone at the times in the indictment. The defendant possessed them, transported them, received them, and it was therefore proper for the court to admit them since they were part of the crimes charged. Unless the court has any questions, we would ask the court to affirm the defendant's conviction. Seeing none, thank you very much for your time. Thank you. Ms. Quick. I want to start with the charts in responding to the government's argument. The most problematic chart I think clearly is Government Exhibit 6, as this contained legal conclusions that the videos involved minors engaged in sex acts. The government doesn't get to circumvent the rules of evidence and tell the jurors that an element of the offense is met and then act like it's doing the defendant a favor by doing so. Generally, whether a video involves minors, that's something that involves, generally what they'll bring in is someone from the National Center for Missing and Exploited Children to come in, provide that basis, give the jury the determination to make that conclusion. Here, it's hearsay concerns. There's confrontation concerns. But instead, what the government is saying, we can have a law enforcement officer watch the video, make the judgment call and say, oh, that's a minor, not introduce that video to the jury to allow them to make that decision on their own, and then say, well, this is us actually doing something beneficial for you because we're not subjecting the jury to those videos, and that's prejudicial, as this Court has found, when the jury is subjected to so many videos. If the concern is that, and there's no indication that this was requested in this case, but the government could always agree to an old cheap type stipulation that these images or videos are child pornography, because it's dangerous going forward if this kind of evidence is allowed in a child pornography trial, because it's often the case that it's not disputed, really, that it's child pornography. It's questions of unallocated space and whether the defendant had knowledge of deleted images. This strategy that the government took allowed them to tell the jury an element of the offense was met, not in preventing any potential backlash from having a jury just hate them for making them watch all of these videos, but still allowing the prosecutor to get an emotional impact and tell the jury, no, be rest assured, we found a lot of videos and they are all horrific, but we're not going to admit them and you don't need to look at them. Turning to the introduction of the preteen images, the government's argument on motive is basically a rehashing of what this Court rejected in Heideberg. The idea that you have a sexual interest in children, that provides your motive to possess child pornography, is exactly what the government tried in Heideberg. There, the defendant had been, or it was discovered the defendant was sexually abusing his stepdaughter, which led the mother to go and find the images of child pornography involving that stepdaughter. The government tried the same argument. Well, it shows the fact that he was sexually abusing this daughter indicates that he had interest in her and that he knowingly possessed the images. This Court said that's just another way of, that's propensity. You can try and couch it in terms of motive, but this is exactly propensity evidence. And there the Court did reverse and remanded for a new trial based off of the improper introduction of those images as this Court should do so here. And the government also points to the standard 404B instruction and we're not arguing instructional error and it's not plain error because we're not arguing instructional error, but it goes into harmless error, which is the government's burden to establish. So if the government wants to establish harmless error and point to these instructions, these instructions need to lessen any harmful impact. And here they don't. That off-the-cuff instruction given at the time makes it worse and is unclear. And the standard 404B instruction doesn't do much better. It is a more solid instruction, but if it is, and the government talked mostly about 404B and it going to knowledge, if it is relevant because it goes to knowledge, which we dispute, that's not what the 404B instruction told the jurors. The 404B instruction said if you find that these were on the device, you can consider them to whether he knowingly transported, received, or possessed these images. What the instruction, if it was for the purpose that the government put forward, it would say if you find that the defendant had knowledge of these images on the SD card, it can show knowledge of the child pornographic images on the device. But here, it can't even go to knowledge because it was in the same area. Even I would dispute that there was some kind of user interaction on page 310 of the trial transcript. The expert acknowledged that there could be an automatic setting where any image is automatically saved to an SD card. But even still, it's the same process as the child pornography. It doesn't provide any additional insight to how the defendant, if the defendant, knew that the images were there. So if there are no further questions, I would ask that this Court reverse and remand for a new trial. Thank you. Thank you very much. The Court will take the case under advisement. Is there anything further to come before the Court this morning? No, Your Honor. The Court will stand in recess until further call of the Court. Thank you very much for your presence here today. We are adjourned.